**SO ORDERED.**

**SIGNED this 06 day of September, 2012.**



*Stephani W. Humrickhouse*
Stephani W. Humrickhouse
United States Bankruptcy Judge

_____

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NORTH CAROLINA
WILSON DIVISION

| | |
|---|---|
| IN RE: | CASE NO. |
| SOMERSET PROPERTIES SPE, LLC | 10-09210-8-SWH |
| DEBTOR | |
| | |
| SOMERSET PROPERTIES SPE LLC | ADVERSARY PROCEEDING NO. |
| Plaintiff | 11-00053-8-SWH-AP |
| v. | |
| LNR PARTNERS, INC.; MIDLAND LOAN SERVICES, INC.; CSFB 2001-CP4 BLAND ROAD, LLC; and CSFB 2001-CP4 FALLS OF NEUSE, LLC | |
| Defendants; | |
| CSFB 2001-CP4 BLAND ROAD, LLC; and CSFB 2001-CP4, FALLS OF NEUSE, LLC, | |
| Counterclaim-Plaintiffs, | |
| v. | |
| SOMERSET PROPERTIES SPE, LLC, and KEVIN WILK, | |
| Counterclaim-Defendants. | |

**ORDER**

During a preliminary pre-trial conference held in Raleigh, North Carolina, on June 11, 2012, the parties disagreed on the extent of the bankruptcy court's ability to enter final orders on the claims and counterclaims at issue in this adversary proceeding. Pursuant to this court's directive, the parties[1] filed supplementary statements to the Pre-Conference Report setting forth their positions. The debtor/plaintiff, Somerset Properties SPE, LLC ("Somerset"), and the counterclaim-defendant, Kevin Wilk ("Wilk"), contend that this court has jurisdiction to enter final orders on all claims against the defendants/counterclaim-plaintiffs, CSFB 2001-CP4 Bland Road, LLC ("Bland Road") and CSFB 2001-CP4 Falls of Neuse, LLC ("Falls of Neuse"), both of which have filed proofs of claim.

In response, defendants Midland Loan Services, Inc. ("Midland"), LNR Partners, LLC ("LNR"), Bland Road, and Falls of Neuse, contend that only the counterclaims asserted by Bland Road and Falls of Neuse against the debtor, Somerset, qualify as "core" claims pursuant to 28 U.S.C. § 157(b)(2), for which final orders can be entered. Thus, the defendants contend that this court can make only proposed findings of fact and conclusions of law regarding all claims by Somerset against them, and regarding all claims by them against Wilk.

For the reasons that follow, the court will dismiss the claims asserted by the Lenders against the counterclaim defendant Wilk. The court will submit proposed findings of fact and conclusions of law with respect to the claims asserted by Somerset against the Servicers and the breach of

---

[1] The parties are as follows: Somerset Properties SPE, LLC (Debtor/Plaintiff/Counterclaim-Defendant); Kevin Wilk (Counterclaim-Defendant); LNR Partners, Inc. n/k/a LNR Partners, LLC (Servicer/Defendant); Midland Loan Services, Inc. (Servicer/Defendant); CSFB 2001-CP4 Bland Road, LLC (Lender/Defendant/Counterclaim-Plaintiff); and CSFB 2001-CP4, Falls of Neuse, LLC (Lender/Defendant/Counterclaim-Plaintiff).

contract for failure to fund operating expenses, unfair and deceptive trade practices, and interference with contract claims asserted by Somerset against the Lenders. The remaining claims, for breach of the duty of good faith and fair dealing (Count Two) and for a declaratory judgment (Count Five), will be heard and determined by this court, and are subject to this court's entry of a final order or judgment.

## BACKGROUND

At issue in this proceeding are two loans, the Somerset Park loan and the Somerset Center/Place loan (the "Loans"). The Loans are secured by property located in Raleigh, North Carolina, and consisting of 23 acres with a campus of six office buildings and one parking deck. In June of 2010, all rights, title, and interests in the deeds of trust and other loan documents relating to the Loans were assigned to Bland Road and to Falls of Neuse, (the "Lenders"), with Midland as the master servicer of the loans and LNR as the special servicer of the loans (the "Servicers").

On June 30, 2010, LNR declared the entire balance of the Loans immediately due because of certain defaults. On September 20, 2010, the debtor, Somerset, filed a complaint against the Lenders and Servicers in the Superior Court of Wake County, North Carolina (the "state court case"), asserting five separate claims for relief consisting generally of claims for breach of contract, unfair and deceptive trade practices, interference with a prospective contract, and a request for a declaratory judgment suspending foreclosure proceedings. Furthermore, Somerset contended that Midland, Bland Road, and Falls of Neuse authorized LNR to act on their behalf, thus making them liable for the actions of LNR.

On November 8, 2010, Somerset filed a petition for relief under chapter 11 of the Bankruptcy Code. On December 17, 2010, defendants removed the state court case to the district court pursuant

3

to 29 U.S.C. § 1452(a) and the case was referred to this court. On December 20, 2012, the Lenders, Bland Road and Falls of Neuse each filed a proof of claim for money loaned to Somerset under the loan documents.[2] The claims together totaled $31,177,885.86. Somerset filed objections to these claims based on the issues to be litigated in the state court case. After Somerset's state court case was removed to this bankruptcy court, a hearing was held on March 24, 2011, and the parties consented to having the debtor's objections to the Lenders' claims heard in this adversary proceeding. However, in light of the Supreme Court's recent decision in Stern v. Marshall, 131 S. Ct. 2594 (2011), the parties now disagree on the authority of the bankruptcy court to enter final orders regarding the claims asserted in this adversary proceeding.

## DISCUSSION

**I.     Authority and Jurisdiction of the Bankruptcy Court to Enter Final Orders**

District courts "have original and exclusive jurisdiction of all cases under title 11" and "original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11." 28 U.S.C. §§ 1334(a), (b). Furthermore, the district courts may refer "any or all cases under title 11 and any or all proceedings arising under title 11 or arising in or related to a case under title 11" to the bankruptcy judges for that district. 28 U.S.C. § 157(a). Bankruptcy judges may hear and determine issues, ultimately entering "appropriate orders and judgments," or proposing findings of fact and conclusions of law, which the district court reviews

---

[2] The documents include the Deed of Trust and Security Agreement, Assignment of Leases, Cash Management Agreement, UCC Financing Statements, Hazardous Substances Indemnity Agreement, and Indemnity and Guaranty Agreement for both Somerset Park Loan and Somerset Center and Somerset Place Loan (hereafter, the "Loan Documents").

4

*de novo*. 28 U.S.C. §§ 157(b)(1), (c)(1). However, bankruptcy courts have "no jurisdiction over proceedings that have no effect on the estate of the debtor" and are not related to a case under title 11. Yellow Sign, Inc. v. Freeway Foods, Inc. (In re Freeway Foods of Greensboro, Inc.), 466 B.R. 750, 766 (Bankr. M.D.N.C. 2012) (quoting Celotex Corp. v. Edwards, 514 U.S. 300, 308 n.6 (1995)). At issue in this proceeding is whether the bankruptcy court has the authority to enter final orders on the claims and counterclaims filed by each party.

      **A.**      **Core vs. Non-Core Proceeding Determination**

In general, the authority of the bankruptcy court to enter a final order "hinges on whether the bankruptcy proceeding is 'core' or 'non-core.'" Burns v. Dennis (In re Southeastern Materials, Inc.), 467 B.R. 337, 345 (Bankr. M.D.N.C. 2012) (citing 28 U.S.C. § 157). If a matter is "related to" a case under title 11 then it is non-core, and a bankruptcy judge may hear the matter and "submit proposed findings of fact and conclusions of law to the district court, and any final order or judgment shall be entered by the district judge." 28 U.S.C. § 157(c)(1); Stern, 131 S.Ct. at 2604; see also Yellow Sign, 466 B.R. at 766; In re Salander O'Reilly Galleries, 453 B.R. 106, 114 (Bankr. S.D.N.Y. 2011) (aff'd, ___ B.R. ___ 2012 WL 2878122 (S.D.N.Y. 2012).

A civil proceeding is "related to" bankruptcy when the proceeding does not invoke a substantive right created by bankruptcy law, but "the outcome of that proceeding could conceivably have [an] effect on the estate being administered in bankruptcy." Valley Historic Ltd. P'ship v. Bank of N.Y., 486 F.3d 831, 836 (4th Cir. 2007) (citing Owens Ill., Inc. v. Rapid Am. Corp. (In re Celotex Corp.), 124 F.3d 619, 625 (4th Cir. 1997)); see also Schmidt v. Klein Bank (In re Schmidt), 453 B.R. 346, 350 (8th Cir. B.A.P. 2011); In re Salander O'Reilly Galleries, 453 B.R. at 114. Additionally, if all parties to a non-core proceeding provide consent, then the bankruptcy court may

5

enter a final order in the proceeding. 28 U.S.C. § 157(c)(2); Stern, 131 S. Ct. at 2607; Yellow Sign, 466 B.R. at 770-71.

In contrast to non-core proceedings, the bankruptcy court has authority to "hear and determine all cases under title 11 and all core proceedings arising under title 11, or arising in a case under title 11 . . . and may enter appropriate orders and judgments." 28 U.S.C. § 157(b)(1); Stern, 131 S. Ct. at 2603; Yellow Sign, 466 B.R. at 765. Therefore, if a proceeding is core, then the bankruptcy court may enter a final order in the matter.

Section 157(b)(2) contains a list of sample core proceedings, and these proceedings include, but are not limited to, the "allowance or disallowance of claims against the estate" along with "counterclaims by the estate against persons filing claims against the estate." 28 U.S.C. § 157(b)(2); Stern, 131 S. Ct. at 2604; Yellow Sign, 466 B.R. at 765-66. Although some courts consider claims that arise in pre-petition litigation and are used to challenge a creditor's proof of claim to be examples of core proceedings under § 157(b)(2), other courts have found that "[p]re-petition common law actions for a claim requiring adjudication of factual disputes unrelated to bankruptcy are not core claims. These claims are private rights because they are 'state law action[s] independent of the federal bankruptcy law and not necessarily resolvable by a ruling on the creditor's proof of claim in bankruptcy.'" In re Fairfield Sentry Litigation, 458 B.R. 665, 688 (S.D.N.Y. Sept. 19, 2011) (quoting Stern, 131 S. Ct. at 2611); see also Burns, 467 B.R. at 362-63 (citing Granfinanciera v. Nordberg, 492 U.S. 33, 56 (1989)) (holding that "common-law actions to augment the size of the estate involving disputed facts to be determined by a jury are not core"); Yellow Sign, 466 B.R. at 767 n.19 (noting authority to the effect that common law actions independent of federal bankruptcy law are not necessarily resolvable by a ruling on the creditor's proof of claim in bankruptcy).

Pursuant to § 157(b)(1), core proceedings can "arise under" title 11 when based on federal bankruptcy law, and core proceedings can "arise in" a bankruptcy case when the proceedings are not based on a particular right afforded under bankruptcy law, but would not otherwise exist outside of the bankruptcy. S. Community Bank & Trust v. Goldston (In re 3G Props., LLC), 2010 WL 4027770 at *2 (Bankr. E.D.N.C. Oct. 14, 2010) (citing Bergstrom v. Dalkon Shield (In re A.H. Robins Co.), 86 F.3d 364, 372 (4th Cir. 1996)).[3] Section 157(b)(2) provides a sample list of core proceedings. However, after the Stern decision, a bankruptcy court cannot simply look to § 157(b) to determine whether it has the authority to enter a final order in a core proceeding.

B.  **Ramifications of Stern v. Marshall on Bankruptcy Courts' Authority to Enter Final Orders in Core Proceedings**

In the recent case of Stern v. Marshall, the Supreme Court found that in certain instances, bankruptcy courts cannot constitutionally render final orders on proceedings deemed core under § 157(b)(2). Stern, 131 S.Ct. at 2608; Yellow Sign, 466 B.R. at 767. More specifically, the Court found that while bankruptcy courts have the statutory authority to enter final judgments on a debtor's counterclaims against persons filing claims against the estate pursuant to the plain language of § 157(b)(2)(C), bankruptcy courts may not constitutionally enter final orders in non-bankruptcy matters that are based in common law or state law, or that would not necessarily be resolved in the

---

[3] See also Valley Historic, 486 F.3d at 836 (explaining that a claim, such as a breach of contract claim that predated the filing of a chapter 11 case, cannot be said to be "arising in" the bankruptcy and that if the breach of contract claim would exist outside of the bankruptcy, then it does not fall within the bankruptcy court's "arising in" jurisdiction); Salander O'Reilly Galleries, 453 B.R. at 114-15 (citing 28 U.S.C. § 157(b)(3)) (explaining that matters "arising under" the Bankruptcy Code are those matters that arise by virtue of a provision in the Bankruptcy Code, and that matters "arising in" a case under the Bankruptcy Code are those which are based on a right created by the Bankruptcy Code and can only be brought in a case under Title 11; noting also that the determination that something is not core "shall not be made solely on the basis that its resolution may be affected by State law").

claims allowance process in bankruptcy. Stern. 131 S. Ct. At at 2609, 2620; Yellow Sign, 466 B.R. at 767; Oxford Expositions, LLC v. Questex Media Group, LLC (In re Oxford Expositions, LLC), 466 B.R. 818, 829 (Bankr. N.D. Miss. 2011). However, the ruling in Stern does not prohibit the estate from bringing core counterclaims based in state law so long as the resolution of the counterclaim is necessary to the determination of whether a creditor's claim should be allowed in a bankruptcy case. Spanish Palms Mktg, LLC v. Kingston (In re Kingston), 2012 WL 632398 at *2 (Bankr. D. Idaho Feb. 27, 2012); see also City of Sioux City v. Civic Partners Sioux City, LLC (In re Civic Partners Sioux City, LLC), 2012 WL 761361 at *8-10 (Bankr. N.D. Iowa Mar. 8, 2012) (explaining that Stern did not completely eliminate state-law counterclaims by the estate from being a core proceeding, but rather provided guidance on how broadly these counterclaims could reach without exceeding constitutional limitations).

In order to determine whether it can enter a final order, then, a bankruptcy court looks to the two-prong test derived from the Court's decision in Stern. The first prong asks whether the action at issue stems from the bankruptcy itself, and the second asks whether the issue would "necessarily be resolved in" the claims allowance process. Id. at 2618; Yellow Sign, 466 B.R. at 768. If *either* of the prongs in the Stern test are met, then the bankruptcy court can enter a final order or judgment. Id.; Burns, 467 B.R. at 348; Yellow Sign, 466 B.R. at 768. It logically follows that if no prongs are met, then the bankruptcy court may not enter a final order or judgment, but may submit proposed findings of facts and conclusions of law for the district court to review *de novo*.[4]

---

[4] Statutory core proceedings (as opposed to constitutional core proceedings) as to which a bankruptcy court may not enter a final judgment receive the same treatment as non-core proceedings under 28 U.S.C. § 157(c)(1), in that the bankruptcy court exercises its authority to enter proposed findings and make recommendations to the district court. Yellow Sign, 466 B.R. at 774; see also Official Comm. of Unsecured Creditors v. Nat'l Patent Dev. Corp. (In re TMG Liquidation Co.),

8

Overall, the bankruptcy court must decide whether the issue at hand is core or non-core. If the issue is non-core, then the court may only submit proposed findings of fact and conclusions of law unless all parties provide their consent for the court to issue a final order. 28 U.S.C. § 157(c)(2). If the issue is statutorily core and meets one of the prongs of the Stern test, then the court may enter a final order on the issue.

## II.     The Lenders' Claims Against Wilk

The Lenders assert four different claims for relief against counterclaim-defendant Wilk. First, they assert that Wilk, as a manager for Somerset, breached his guarantee obligations by misapplying Somerset's rents because he failed to pay the rents to the Lenders. Second, they assert that Wilk breached his obligations by causing Somerset to waive its lease rejection damage claim in the chapter 11 case of Stock Building Supply. Third, the Lenders assert that Wilk breached the duty of good faith and fair dealing vis-à-vis the Lenders by ensuring that the Lenders did not receive the benefits of the Loan Documents. Finally, the Lenders ask the court to determine whether Wilk is liable for damages and, if so, in what amount.

---

2012 WL 1986526 at *2 (D.S.C. June 4, 2012); Joe Gibson's Auto World, Inc. v. Zurich Am. Ins. Co. (In re Joe Gibson's Auto World, Inc.), 2012 WL 1107763 at *2-3 (D.S.C. Apr. 2, 2012) (explaining that Stern did not eliminate the authority of bankruptcy courts to submit proposed findings of fact and conclusions of law to the district court regarding matters that it cannot constitutionally hear); D&B Swine Farms, Inc. v. Murphy-Brown, LLC (In re D&B Swine Farms, Inc.), 2011 WL 6013218 at *2 (Bankr. E.D.N.C. Dec. 2, 2011) (rejecting argument that the bankruptcy court has no statutory authority to render proposed findings and conclusions after Stern); Field v. Lindell (In re Mortgage Store, Inc.), 464 B.R. 421, 426-28 (D. Hawaii Oct. 5, 2011) (explaining that Congress's intent under 28 U.S.C. § 157 clearly was that bankruptcy courts, to the extent possible, should adjudicate cases relating to Title 11, and that Congress intended for core proceedings found to be unconstitutional under Stern to fall within 28 U.S.C. § 157(c)(1), granting bankruptcy courts permission to submit proposed findings and recommendations).

Lenders assert that these claims against Wilk are not core, but instead are "related to" proceedings, and the court may issue only proposed findings of fact and conclusions of law regarding them. Mr. Wilk consents to the jurisdiction of the bankruptcy court for the purpose of resolving the claims asserted against him, but Lenders do not consent to the court entering a final judgment on these claims. The court concludes that it may not hear the Lenders' claims against Wilk at all because it lacks jurisdiction to do so. The claims are not "related to" matters under 28 U.S.C. § 1334(b).

Because Wilk is a third party to the bankruptcy proceeding, the applicable test by which to determine whether the court has jurisdiction is the test adopted by the Fourth Circuit and set forth in Pacor, which asks if the outcome of the proceeding "could alter the debtor's rights, liabilities, options, or freedom of action (either positively or negatively)" and impact the handling or administration of the estate. Owens-Illinois, Inc. v. Rapid Am. Corp. (In re Celotex Corp.), 124 F.3d 619, 625 (4th Cir. 1997) (discussing Pacor, Inc. v. Higgins, 743 F.2d 984, 994 (3rd Cir. 1984)). In this case, a ruling on the state law claims against Wilk would not have an impact on the bankruptcy estate or alter Somerset's rights, abilities, liabilities, options, or freedom. Although the Pacor test is construed broadly by the Fourth Circuit, in this particular situation there is no possibility that a ruling regarding the claims against Wilk would impact the bankruptcy estate. See Titus v. Smith, 2012 WL 2255498 at *4 (N.D.W. Va. June 15, 2012) (construing Blanton v. IMN Fin. Corp., 260 B.R. 257, 261 (M.D.N.C. 2001)). Because there is no possible impact or alteration of the bankruptcy estate, the claims against Wilk do not satisfy the standards to be deemed a "related to" proceeding and the court does not have jurisdiction to decide these claims. Yellow Sign, 466 B.R. at 766 (citing Celotex Corp. v. Edwards, 514 U.S. 300, 308 n.6 (1995)).

### III. The Lenders' Claims Against Somerset

The Lenders assert three different claims for relief against Somerset: 1) breach of the Somerset Park loan documents; 2) breach of the Somerset Center/Place loan documents; and 3) breach of the duty of good faith and fair dealing. The Lenders contend that these are core claims and that the court has the authority to enter a final judgment. Somerset agrees. The court likewise agrees with the parties that these claims are core and can be fully adjudicated by the bankruptcy court.

Under § 157(b)(2), a claim for relief against Somerset would be a claim against the bankruptcy estate, which is a core proceeding. 28 U.S.C. § 157(b)(2)(B). Therefore, each of the three claims asserted by Lenders against Somerset are core and the court may issue final rulings in these matters. 28 U.S.C. § 157(b)(1); Stern, 131 S.Ct. at 2603-04; Yellow Sign, 466 B.R. at 765.

### IV. Somerset's Claims Against the Lenders and Servicers

Somerset, as plaintiff, asserts five different claims for relief against the Lenders and the Servicers, contending generally that Midland, Bland Road, and Falls of Neuse acted through their special servicer, LNR, and are for that reason liable for the actions of LNR. First, Somerset asserts that LNR breached its contractual obligations to Somerset to fund operating expenses, for which all defendants are liable. Second, Somerset asserts that LNR breached its contractual obligations by exercising its discretion in a manner inconsistent with the covenant of good faith and fair dealing, for which all defendants are liable. Third, Somerset asserts that LNR practiced unfair and deceptive trade practices, for which all defendants are liable. Fourth, Somerset asserts that LNR intentionally interfered with a prospective contract for Somerset with DunnWell. Finally, Somerset asks the court to determine that Somerset is not in material breach of the Loan Documents, and seeks a declaratory

judgment awarding money damages against all four defendants based on all four of the claims just listed.[5]

### A.    Somerset's Claims Against Midland and LNR ("the Servicers")

All parties agree that Somerset's claims against the Servicers are not core proceedings and Somerset explains, in its brief, that the claims cannot be core because the Servicers have not filed proofs of claim in the bankruptcy proceeding. The court agrees with the parties that Somerset's claims against the Servicers are not core claims.

The claims against the Servicers do not fit into any of the sample proceedings listed under § 157(b)(2), including allowance of claims or counterclaims by the estate against persons filing claims against the estate, because the Servicers have not filed proofs of claim in this bankruptcy proceeding. Additionally, the claims against the Servicers were filed in state court and existed outside of the bankruptcy proceeding, so these claims cannot said to be "arising under" Title 11 nor can they be said to be "arising in" a case under Title 11.

Somerset's claims against the Servicers are, however, "related to" the bankruptcy because the disposition of the claims conceivably could have an effect on the estate. Specifically, a ruling in favor of Somerset could significantly augment the size of the estate and the ability to provide for unsecured creditors. Therefore, the court will submit proposed findings of fact and conclusions of law to the district court for its *de novo* review. 28 U.S.C. §§ 1334(b), 157(c)(1).

---

[5] In the Fifth Claim, which requests entry of a declaratory judgment, Somerset requests entry of monetary awards against all defendants based on all claims, including the Fourth Claim. In its Complaint, however, Somerset does not, in the Fourth Claim, allege joint and several liability on the part of all defendants.

12

**B.     Somerset's Claim against Bland Road and Falls of Neuse ("the Lenders")**

Leaving aside the Fourth Claim, Somerset asserts four separate claims for relief against the Lenders: breach of contract for failure to fund operating expenses (First Claim); breach of the duty of good faith and fair dealing (Second Claim); unfair and deceptive trade practices (Third Claim); and a request for a declaratory judgment that Somerset is not in material breach of the Loan Documents (Fifth Claim). Lenders contend these are not core claims because they arose outside of bankruptcy in a state court proceeding. Somerset, however, asserts that these claims are core proceedings because they pertain to the allowance or disallowance of claims.

Some courts have found that although an action was initiated by a complaint rather than a traditional counterclaim, "such actions are in the nature of a counterclaim when asserted against parties who have filed proofs of claim in the bankruptcy case." Shaia v. Taylor (In re Connelly), ___ B.R. ___, 2012 WL 1098431 at *5 (Bankr. E.D. Va. Mar. 30, 2012) (quoting Fort v. Suntrust Bank (In re Int'l Payment Grp., Inc.), 2011 WL 5330783 at *2 (Bankr. D.S.C. Nov. 3, 2011)); see also Blackshire v. Litton Loan Servicing, L.P., 2009 WL 426130 at *3 (S.D.W. Va. Feb. 13, 2009) (explaining that plaintiff's claims based in state law were core proceedings because the claims were essentially counterclaims against creditors who had filed proofs of claim in the bankruptcy proceeding; furthermore, because the plaintiff's claims for relief arose from the same transaction upon which the creditor's claims against the estate were based, the adversary proceeding constituted a counterclaim under § 157(b)(2)(C)). This court agrees that Somerset's claims against the Lenders are statutory core claims under § 157(b)(2) because they are counterclaims by the estate against persons filing claims against the estate. These claims were filed in state court prior to initiation of

this bankruptcy proceeding, but they now function as counterclaims to the claims filed by the Lenders against the estate.

Specifically, on December 20, 2010, the Lenders each filed proofs of claim in the bankruptcy proceeding. Bland Road filed a proof of claim in the amount of $14,957,489.91 based on the Somerset Park loan. Falls of Neuse filed a proof of claim for $16,220,395.95 based on the Somerset Center/Place loan. Now, as a defense to the claims filed by Lenders, Somerset asserts these claims regarding breaches of contract, which arise out of the same set of Loan Documents as the Lenders' claims. Overall, because the Lenders have filed proofs of claim in this proceeding, Somerset's claims constitute counterclaims by the estate and are statutory core proceedings under § 157(b)(2)(C). Because these counterclaims by Somerset are based in North Carolina state law, though, the court still must apply the Stern analysis to determine whether it may constitutionally enter a final order on these matters.

### 1. Breach of Contract for Failure to Fund Operating Expenses (First Claim)

Somerset's first claim for relief asserts that Lenders breached their contract with Somerset by failing to fund operating expenses. This claim does not stem from the bankruptcy itself because it first arose in state court and is based on state law, and thus does not satisfy the first prong of Stern.

To assess the latter half of the Stern test, courts generally look to see if a "common nucleus of law and fact" exists to inextricably intertwine the claims and counterclaims. McElwee v. Scarff Bros., Inc. (In re McElwee), 469 B.R. 566, 576-77 (Bankr. M.D. Pa. 2012); see also Tolliver v. Bank of Am. (In re Tolliver), 464 B.R. 720, 736 (Bankr. E.D. Ky. 2012) (explaining that the court in Stern looked at not only the "factual overlap of the claim resolution and the counterclaim, but also the legal elements which must be determined to resolve the claim and the counterclaim and the remedies

14

sought by the counterclaim and the impact on the claims allowance process"). Furthermore, for a counterclaim to be necessarily resolved in ruling on the proof of claim, the relationship must be such that resolution of the counterclaim would alter the amount sought by the claimant. See In re Olde Prairie Block Owner, 457 B.R. 692, 698-99 (Bankr. N.D. Ill. 2011) (finding that two counterclaims for breach of contract had to be resolved in ruling on the proof of claim because one sought 'recession' based on economic duress and the other sought damages for a breach of good faith and fair dealing, which would reduce the amount claimed by debtor).

Moreover, a counterclaim that seeks to reduce the amount that debtors owe to a claimant should be contrasted with the situation where a bankruptcy estate is seeking affirmative monetary relief from a claimant to augment the bankruptcy estate. McElwee, 469 B.R. at 576. In other words, a counterclaim by the estate based in state law must seek to directly reduce or recoup the amount claimed in order to be resolved in ruling on the proof of claim. Applying this type of test, a counterclaim by the bankruptcy estate that seeks affirmative monetary relief to augment the estate but does not directly modify the amount claimed would not qualify as a claim to be resolved in ruling on the proof of claim. Finally, because this type of counterclaim would not be resolved in the claims allowance process, the claim would fail the second prong of Stern and be deemed a non-core proceeding.

In this first claim, Somerset asserts that the Lenders breached contractual obligations under the Loan Documents by failing to release funds for operating expenses. Specifically, Somerset claims that LNR, acting on behalf of all the Lenders, did not comply with the requirement to release funds from the Operating Account within five days of a proper request under Section 2.11 of the Cash Management Agreements. The Lenders, in contrast, support both of their proofs of claim,

15

valued at $14,957,489.91 and $16,220,395.95, by use of the same Cash Management Agreements referenced in the Somerset claims. Both Lenders accelerated the amount due under the Loans because of numerous accused defaults by Somerset, including Somerset's failure to pay under the same Cash Management Agreements.

Even though the claims arise out of the same documents, the court does not believe these alleged breaches of the Cash Management Agreements are inextricably intertwined with, and would necessarily be resolved in, the claims allowance process. Although it is difficult for courts to predict the nature of the claims in the adversary proceeding, the court does not believe this claim for breach is capable of relieving Somerset's obligations under the contract. Because Somerset would not be relieved of its obligations under state law, the Lenders' claims would not be directly altered and this counterclaim would not necessarily be resolved in the claims allowance process.

The court views this claim as an example of the bankruptcy estate asking for affirmative monetary relief in order to augment the size of the estate, as opposed to asking for a direct reduction or rescission of the amount claimed by Lenders (though that also would indirectly augment the estate). This counterclaim is not inextricably intertwined with the Lenders' proofs of claim and would not necessarily be resolved in the claims allowance process. Because this claim does not pass the second prong of the Stern test, it will be treated as a non-core proceeding. The court will submit proposed findings of fact and conclusions of law to the district court regarding this claim.

### 2. Breach of the Duty of Good Faith and Fair Dealing (Second Claim)

In its second claim for relief, Somerset asserts that Lenders breached their duty of good faith and fair dealing through at least three different failures of LNR to fund or approve various transactions for Somerset, and with regard to funds held in lock boxes. Lenders contend that this

16

issue is not core and the court cannot enter a final judgment on this claim. Somerset counters that this issue is core, that it passes muster under Stern, and that the court can enter a final judgment.

Applying the first prong of Stern, this claim does not stem from the bankruptcy itself because this claim first arose in state court and is based on North Carolina state law. The question remaining for the court under the Stern test is whether this claim would be resolved in the claims allowance process. Here, in order for the court to determine the accurate amount owed under the proof of claim, the court will have to ascertain the correct totals for the two separate lock box accounts. Somerset asks for damages in the form of affirmative monetary relief, but also directly attacks the amount Lenders set forth in the proofs of claim.

In cases where determination of the issues in a claim are so intricately melded with deciding the amount of a claim, the court has constitutional authority under Stern to enter a final order. Spanish Palms, 2012 WL 632398 at *8; Oxford Expositions, 466 B.R. at 829; see also Salander O'Reilly Galleries, 453 B.R. at 116-17. The court must decide whether LNR wrongly withdrew funds from the lock box accounts in order to determine the amount owing per the Lenders' proofs of claim, meaning the counterclaim and proof of claim are intertwined. This counterclaim passes the second prong of the Stern test and the court will hear and enter a final ruling on whether Lenders violated the duty of good faith and fair dealing vis-à-vis Somerset.

### 3. Unfair and Deceptive Trade Practices (Third Claim)

As to this claim, the court reiterates the reasoning set out above with respect to the First Claim for breach of contract. The unfair and deceptive trade practices claim first arose in state court, is based on state law, will not affect the calculation of the amount of the Lenders' proofs of claim and therefore does not satisfy either the first or the second prong of Stern. It will be treated as a non-

core proceeding, and the court will submit proposed findings of fact and conclusions of law to the district court.

### 4.     Interference with Prospective Contract (Fourth Claim)

The complaint does not allege joint and several liability with regard to this claim within the Fourth Claim itself, and instead sets forth allegations only with respect to LNR. (As noted earlier, Somerset nonetheless seeks in the Fifth Claim to recover monetary damages from all defendants based on the allegations in the Fourth Claim, and the omission of an allegation of joint and several liability in this claim is probably inadvertent. The court's reasoning would not be different if Somerset had included an allegation of joint and several liability in the Fourth Claim.)

As to this claim as well, the court reiterates the reasoning set out above with respect to the First Claim for breach of contract. The interference with prospective contract claim first arose in state court, is based on state law, will not affect the calculation of the amount of the Lenders' proofs of claim, and therefore does not satisfy either the first or the second prong of Stern. It will be treated as a non-core proceeding, and the court will submit proposed findings of fact and conclusions of law to the district court.

### 5.     Claim for Declaratory Judgment (Fifth Claim)

In the final claim against the Lenders, Somerset asks the court for a declaratory judgment that Somerset is not in material breach of the Loan Documents. Somerset contends that this claim is core, and relates to whether the Lenders' claims should be allowed and, if so, in what amount. Lenders disagree.

Again, applying the first prong of Stern, this claim does not stem from the bankruptcy itself because it first arose in state court and is based on North Carolina state law. The court therefore

turns to the second prong of the <u>Stern</u> test. This claim directly attacks the amount Lenders seek in their proofs of claim and asks the court to rule that Somerset is not in breach of the Loans. The court agrees that whether Somerset defaulted on the loan documents must be decided in order to determine whether to award the amounts claimed by Lenders, who claim amounts that include interest charged per the default interest rate. If the court were to decide that Somerset was not in material breach, then the amount claimed by Lenders could be reduced or rescinded. As such, this claim will necessarily be resolved in the claims allowance process and passes the second prong of <u>Stern</u>. As a core proceeding, the court will issue a final ruling on whether Somerset was in material breach of the loan documents.

## CONCLUSION

Based upon the foregoing, the claims asserted by the Lenders against the counterclaim-defendant Wilk are **DISMISSED** on grounds that the court lacks subject matter jurisdiction to hear them.

The Lenders' three claims against the debtor, Somerset, are core claims which this court has the authority to hear and determine, and as to which the court may enter a final judgment. The claims asserted by Somerset against the Servicers are not core claims, but for the reasons set out above, the court will enter proposed findings of fact and conclusions of law with respect to those claims.

Somerset's claims against the Lenders, Bland Road and Falls of the Neuse are statutory core claims but will, as outlined above, receive differing treatment from the court. Because the claims for breach of the duty of good faith and fair dealing and for a declaratory judgment also pass the second prong of the <u>Stern</u> test, the court may hear and determine those claims and issue a final

ruling. The claims for breach of contract for failure to fund operating expenses, unfair and deceptive trade practices, and the interference with contract, because they fail the first and second prongs of the <u>Stern</u> test, will be treated as non-core and the court will, after hearing that claim, submit proposed findings of fact and conclusions of law to the district court.

**SO ORDERED**.

**END OF DOCUMENT**